### IN THE UNITED STATES DISTRICT COURT
### FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DOUGLAS A. THEBES, : | |
| : | No. 1:11-cv-2250 |
| Appellant, : | |
| : | Hon. John E. Jones III |
| v. : | |
| : | |
| COMMONWEALTH OF : | |
| PENNSYLVANIA, DEPARTMENT : | |
| OF ENVIRONMENTAL PROTECTION, : | |
| : | |
| Appellee. : | |

### MEMORANDUM

### May 17, 2012

### THE BACKGROUND OF THIS MEMORANDUM IS AS FOLLOWS:

Pending before the Court is the Appeal of Appellant Douglas A. Thebes ("Debtor") from the October 19, 2011, Order of the United States Bankruptcy Court of the Middle District of Pennsylvania. (Doc. 1). For the reasons fully articulated herein, the Appeal shall be denied.

### I.     STANDARD OF REVIEW

Jurisdiction over the instant bankruptcy appeal is premised upon 28 U.S.C. § 158(a)(1). "[F]indings of fact made by the bankruptcy court may be reversed only for clear error." *In re NelsonCo.*, 959 F.2d 1260, 1263 (3d Cir. 1992) (citations omitted). However, legal questions and conclusions are subject to plenary, *de novo*

review. *Id.*; *see also In re O'Brien Envtl. Energy Inc.*, 188 F.3d 116, 122 (3d Cir. 1999).

## II. PROCEDURAL HISTORY

On April 10, 2010, the Debtor, Douglas A. Thebes ("Debtor") filed a voluntary Chapter 13 bankruptcy petition in the United States Bankruptcy Court for the Middle District of Pennsylvania. That case was docketed at 1:10-bk-03302 and was assigned to the Honorable Mary D. France, Chief United States Bankruptcy Judge. The petition was later converted to Chapter 11, and on January 10, 2011, was converted to Chapter 7.

On February 7, 2011, the Debtor commenced an adversary proceeding against the Commonwealth of Pennsylvania, Department of Environment ("DEP" or "Appellee"), docketed at 1:11-ap-00049. The Debtor sought a declaration that a pre-petition cleanup obligation to the DEP is a debt dischargeable in Chapter 7 bankruptcy under the bankruptcy code. The DEP filed a Motion for Summary Judgment and a brief in support thereof, along with supporting documentation and a statement of material facts. The Debtor filed an Answer to the Motion and a brief in opposition; however, the Debtor did not exercise his option to respond to the DEP's statement of material facts and thus the facts as asserted by the DEP were deemed to be admitted pursuant to Local Rule 56.1.

After thorough and considered analysis of the parties' briefs and the record, Judge France entered an Opinion and Order on October 19, 2011, which granted the DEP's Motion and concluded that the Debtor's obligations owed to the DEP "do not fit the standards set for a claim and, therefore, are not dischargeable in bankruptcy under § 727(b)." (M.D. Pa. Bankr. No. 1:11-ap-00049, Doc. 49).

On December 5, 2011, Debtor filed a Notice of Appeal. The parties have fully briefed the Appeal (Docs. 4-5), and it is therefore ripe for our review.

## III. FACTUAL BACKGROUND

### A. The Contamination and DEP Cleanup Order

The Debtor, jointly with Christopher R. Thebes and Frederick D. Thebes, is the owner of a 58-acre parcel of land located in Perry County, Pennsylvania. An adjacent parcel of approximately 93 acres is solely owned by Frederick D. Thebes. Both properties will collectively be referred to as the "Thebes Site." For a period of time prior to 1990, the Thebes family was permitted by the state to use the Thebes Site as a landfill; however, for approximately sixteen years, beginning in April of 1990 and continuing through May of 2006, the Thebes family continued to deposit solid waste on the site, or direct its employees to do so, without the requisite state permits. The family did not undertake appropriate and requisite precautionary measures to protect against contamination of the ground or groundwater supply.

On November 15, 2006 and March 15, 2007, the DEP investigated the Thebes Site to determine whether sixteen years of illegal waste dumping had resulted in contamination and, if so, to what extent. The Environmental Hearing Board ("EHB"), based upon this investigation and the evidence presented to it, found that pollutants and contaminants from the deposited waste pose a significant danger of pollution and that groundwater contamination was a virtual certainty, with the only uncertainty being the timing and extent thereof.

On May 4, 2007, the DEP issued a Cleanup Order and assessed civil penalties pursuant to Pennsylvania's Solid Waste Management Act ("SWMA"), 35 P.S. §§ 5018.101-.1003, to Debtor, Christopher R. Thebes, Frederick Thebes, and their respective corporate entities. Specifically, the Cleanup Order directed the Debtor and others, *inter alia*, to report the location of all deposited solid waste to the DEP, to excavate and remove solid waste in the amount of 750 tons per month, to transport the excavated waste to a permitted waste facility, and to submit to the DEP a detailed plan for investigating, characterizing, and assessing the nature and extent of the groundwater contamination. The Debtor, with others, appealed the Cleanup Order and penalty to the EHB, contesting specifically the reasonableness of the civil penalty. Before the EHB issued an order, the Debtor filed his bankruptcy petition. On May 13, 2010, the EHB ultimately upheld the Cleanup

Order and assessment of civil penalties.

### B.     Current State of Thebes Site Contamination

In its May 2010 adjudication upholding the Cleanup Order and civil penalty assessment, the EHB concluded that "[g]roundwater contamination is already occurring, as evidenced by a leachate-impacted spring." (Doc. 3-2, ¶ 105). The DEP's Regional Waste Manager, Anthony Rathfon, stated in his affidavit in support of the DEP's Motion that the Debtor had not yet informed the DEP of the location of all illegally-disposed of waste as required by the Cleanup Order, thus rendering it impossible to comprehend the extent of the continuing contamination. (Doc. 3-4, ¶¶ 9-10).

Timothy Long, a licensed professional geologist, participated in the initial investigation of the property, observing during March and May 2007 excavations that water running from the waste was flowing in the direction of nearby water wells, secreting a smell associated with leachate and staining the ground a heavy reddish-orange color. (Doc. 3-5, ¶¶ 3-7). Long again visited the Thebes Site in April of 2011 and again observed leachate seeping from known contamination sites. (Doc. 3-11, ¶¶ 1, 3-5). Long concluded that the contamination at the Thebes Site is "continuing and ongoing, and will remain ongoing, until the Thebes Site is fully remediated." (Doc. 3-5, ¶ 7; Doc. 3-11, ¶ 9).

The Debtor failed to submit his own expert reports contradicting Long's conclusions with respect to the continuing nature of the contamination. In opposing the DEP's Motion, the Debtor contended only that the DEP's evidence failed to establish ongoing contamination and that to his knowledge, there was no ongoing contamination at the Thebes Site.

## IV. DISCUSSION

### A. Statement of Issue on Appeal

The issue on appeal before this Court is whether Judge France correctly held that there were no genuine issues of material fact remaining with respect to whether or not the Cleanup Order constituted a dischargeable debt under the bankruptcy code, specifically with respect to the contested issue of whether the contamination of the Thebes Site is continued and ongoing and whether the DEP dispossessed the Debtor of the Thebes property such that he was prohibited from complying with the Cleanup Order. Based on our review of this matter, we reach the same conclusions as Judge France and shall affirm the Bankruptcy Court's October 19, 2011 Order, for the reasons fully set forth herein.

### B. Analysis of Issues on Appeal

The Debtor argues on appeal that Judge France erred first in concluding that he had not been dispossessed of the Thebes Site and second in finding that the

Thebes Site presents ongoing and continuing contamination, or a threat thereof. He contends that genuine issues of material fact remain with respect to both of these critical points and that the court thus erred in concluding that his obligations under the Cleanup Order are nondischargeable under the bankruptcy code. We begin with a brief summary of the relevant precedent regarding injunctive orders as dischargeable debts.

### 1. When Are Injunctive Orders Dischargeable Debt?

In order to be discharged under the bankruptcy code, an injunction against a debtor must constitute a "debt" under 11 U.S.C. § 101(12). A "debt" is defined therein as a "liability on a claim," and a "claim" is further defined to include a "right to an equitable remedy for breach of performance if such breach gives rise to a right of payment. . . ." *Id.* § 101(5)(B), (12). Thus, "[a]n equitable remedy will give rise to a right of payment, and therefore be deemed a claim for purposes of the Bankruptcy Code, when the payment of monetary damages is an alternative to the equitable remedy." *In re Ben Franklin Hotel Assocs.*, 186 F.3d 301, 305 (3d Cir. 1999).

The seminal case addressing whether an injunctive cleanup order is a debt dischargeable in bankruptcy is *Ohio v. Kovacs*, 460 U.S. 274 (1985). In *Kovacs*, the state of Ohio obtained an injunction ordering Kovacs to clean up a hazardous

waste disposal site. *Id.* at 275. When Kovacs and others failed to comply, the state appointed a receiver who took possession of the property and Kovacs' assets in order to complete the cleanup process itself. *Id.* at 276. After the receiver assumed his position but prior to finishing the cleanup, Kovacs petitioned for bankruptcy. *Id.* The receiver moved to seek part of Kovacs' post-bankruptcy income to satisfy its remaining cleanup obligations, a determination which the Bankruptcy Court stayed in light of the receiver's request for a declaration that Kovacs' obligations to the state were not dischargeable in bankruptcy. *Id.*

The Bankruptcy Court, District Court, and Court of Appeals for the Sixth Circuit concluded in turn that the debt was dischargeable, and the Supreme Court granted certiorari. *Id.* at 277-78. Writing for the majority, Justice White observed that the state, through the receivership, had entirely "dispossessed" Kovacs from entering the land and complying with the mandates of the cleanup order. *Id.* The Court noted, and the state conceded, that "the only performance sought from Kovacs [after the receiver's appointment] was the payment of money." *Id.* The Court held that because the receivership had entirely eliminated Kovacs' ability to personally clean up the land and reduced the cleanup order to nothing more than a monetary obligation to the state, the order fell within the bankruptcy code's definition of a claim and was thus dischargeable. *Id.* at 282.

The Third Circuit's post-*Kovacs* decision in *In re Torwico Electronics, Inc., v. State of New Jersey*, 8 F.3d 146 (3d Cir. 1993), is particularly instructive here. In *Torwico*, the Third Circuit articulated and expounded upon the critical distinctions between dischargeable and non-dischargeable injunctive orders. The Circuit in *Torwico* pointed out that it was state's role as a direct creditor in *Kovacs* which rendered the debtor's cleanup obligations to the state a dischargeable claim, not the mere fact that compliance with the obligation would necessarily require the debtor to expend money. *Id.* at 150. The case is different, *Torwico* holds, where the state is merely acting in its regulatory capacity, enforcing and ordering compliance with its laws. *Id.*

In *Torwico*, the Circuit succinctly articulated the *Kovacs* distinction as follows:

> As *Kovacs* noted, a debtor cannot maintain an ongoing nuisance in direct violation of state environmental laws. The state can exercise its regulatory powers and force compliance with its laws, *even if the debtor must expend money to comply*. Under *Kovacs*, what the state cannot do is force the debtor to pay money to the state; at that point, the state is no longer acting in its role as regulator, it is acting as a creditor.

*Id.* at 150. The Circuit noted that "virtually all enforcement actions impose some cost on the violator" and concluded that allowing these obligations to the state to be discharged would effectively divest the state of its ability to effectively enforce

9

its laws. *Id.* at 150 n.4. The court went on to emphasize that where "the state demanded not that [the debtor] pay money over to the state, but rather that it take action to ameliorate an *ongoing* hazard," the obligation is not a dischargeable claim. *Id.* at 150 (emphasis added).

The distinction between the requirement of ending or ameliorating ongoing contamination and remedying past pollution is a critical one, having its basis in the statutory definitions of "debt" and "claim" themselves. The Second Circuit Court of Appeals in *In re Chateaugay*, 944 F.2d 997 (2d Cir. 1991), a case which guided the Third Circuit's decision in *Torwico*, held that, in the context of an order requiring the debtor to "remove[] accumulated waste and prevent[] continued pollution[,] . . . it is only the first attribute of the order that can be said to remedy a breach that gives rise to a right to payment." *Id.* at 1008. The *Chateaugay* court went on to explain that because a state cannot accept monetary payment "in lieu of continued pollution, any order that to any extent ends or ameliorates continued pollution is not an order for breach of an obligation that gives rise to a right of payment and is for that reason not a 'claim.'" *Id.* Likewise, in another case relied upon by the *Torwico* court applying a similar rationale, the Seventh Circuit instructed that only obligations to end or ameliorate "threatened or ongoing" contaminations are non-dischargeable. *See In re CMC Heartland Partners*, 966

Case 1:11-cv-02250-JEJ Document 6 Filed 05/17/12 Page 11 of 16

F.2d 1143, 1147 (7th Cir. 1992).

Applying these principles, the Third Circuit in *Torwico* found that the state neither sought payment nor had a right to payment, but instead sought regulatory compliance through ordered cleanup of current and continuing contamination. *Torwico*, 8 F.3d at 151. The fact that the order required the debtor to ameliorate an ongoing contamination rendered its obligation not a "repackaged claim" for past damages resulting from a breach that gave rise to a right of payment but instead an equitable and continuing obligation to comply with the law which monetary payment to the state cannot remedy or rectify. *Id.* Accordingly, as the parties and the court below properly observed, the issue turns on whether the order at issue requires only cleanup of a closed contamination, that is, a "repackaged claim for damages" dischargeable in bankruptcy, or whether the order is an effort that, to any extent, attempts to end or ameliorate current and ongoing pollution.

### 2. Is the DEP's Cleanup Order a Dischargeable Debt?

We thus must proceed to determine whether the court below correctly found that no genuine issues of material fact remain for trial with respect to whether or not the Cleanup Order at issue in the case *sub judice* to any extent attempts to end or ameliorate current and ongoing pollution. The Bankruptcy Court concluded that the record establishes, by evidence uncontradicted by the Debtor, that the state did


F.2d 1143, 1147 (7th Cir. 1992).

Applying these principles, the Third Circuit in *Torwico* found that the state neither sought payment nor had a right to payment, but instead sought regulatory compliance through ordered cleanup of current and continuing contamination. *Torwico*, 8 F.3d at 151. The fact that the order required the debtor to ameliorate an ongoing contamination rendered its obligation not a "repackaged claim" for past damages resulting from a breach that gave rise to a right of payment but instead an equitable and continuing obligation to comply with the law which monetary payment to the state cannot remedy or rectify. *Id.* Accordingly, as the parties and the court below properly observed, the issue turns on whether the order at issue requires only cleanup of a closed contamination, that is, a "repackaged claim for damages" dischargeable in bankruptcy, or whether the order is an effort that, to any extent, attempts to end or ameliorate current and ongoing pollution.

### 2. Is the DEP's Cleanup Order a Dischargeable Debt?

We thus must proceed to determine whether the court below correctly found that no genuine issues of material fact remain for trial with respect to whether or not the Cleanup Order at issue in the case *sub judice* to any extent attempts to end or ameliorate current and ongoing pollution. The Bankruptcy Court concluded that the record establishes, by evidence uncontradicted by the Debtor, that the state did

not prohibit the Debtor from complying with the order, as in *Kovacs*, and that the pollution remains ongoing and continuing on the Thebes Site, as in *Torwico*. The court thus concluded that the obligation does not create a right of payment in the state but instead enforces the Commonwealth's environmental regulations and is thus not a claim dischargeable in Chapter 7 bankruptcy.

The Debtor contends that the standard for summary judgment was not satisfied in the court below because the court overlooked two genuine issues of material fact. First, the Debtor asserts that Judge France wrongly concluded that he has not been dispossessed of the contaminated property. He asserts that, as in *Kovacs*, he is prohibited from entering the property and coming into compliance with the Cleanup Order. Second, he submits that a genuine issue of material fact remains for trial regarding whether or not the pollution is current and ongoing, which pursuant to *Kovacs* and *Torwico* is a dispositive factual issue. We address each of these contentions in turn.

The Debtor first contends that he has been dispossessed of the contaminated property, urging a *Kovacs* analogy. The court below held, in a factual finding that we cannot upset absent clear error, that the record is entirely devoid of evidence that the Debtor has indeed been dispossessed of the property and prohibited from entering the land to comply with the mandates of the Cleanup Order. Indeed, an

independent review of the record reveals that the only evidentiary support for this contention is the Debtor's own conclusory statement that he has in fact been dispossessed, which by itself is insufficient to establish a genuine issue of material fact for summary judgment purposes. *See Kirleis v. Dickie, McCamey & Chilcote*, 560 F.3d 156, 161 (3d Cir. 2009); *Podobnik v. U.S. Postal Serv.*, 409 F.3d 584, 594 (3d Cir. 2005).

As Judge France appropriately noted, the Debtor fails to offer any other evidence that he has been denied entrance to the land or otherwise prohibited from complying with the Cleanup Order by either the DEP or the bankruptcy trustee. Accordingly, the Debtor's first argument is without merit, and we hold that the Bankruptcy Court did not commit error in its finding that the Debtor has not, in any way, been dispossessed of the property or prohibited from complying with the Cleanup Order.

We likewise find that the record contains no evidence contradicting the DEP's expert affidavits establishing that the pollution and contamination of the Thebes Site is continued and ongoing and a direct threat to the state's water supply and nearby domestic water wells. As above-stated, the EHB concluded after extensive investigation that contamination was a virtual certainty, with the only uncertainties being timing and extent of the same. Confirming the EHB's

suspicions and concerns, Timothy Long, an expert geologist, twice concluded, after 2007 and 2011 visits to the property, that groundwater contamination was continuous and ongoing and will *remain* ongoing until a time when the Debtor and others responsible have fully remediated the site. (Doc. 3-11, ¶ 9). Anthony Rathfon's affidavit supports both findings, detailing his observations as to the extent of the contamination and the as-yet-incomplete actions needed to ameliorate the same.[1]

In attempt to counter this objective evidence, the Plaintiff argued in his opposition papers that, to his knowledge, the contamination at the Thebes Site is not continuing and ongoing and thus the Cleanup Order is a dischargeable claim

---

[1] We address briefly the Debtor's contention that the Bankruptcy Court may not rely on the affidavit of an employee of a party in support of that party's motion for summary judgment pursuant to *Sartor v. Ark. Nat. Gas Corp.*, 321 U.S. 620 (1944). In *Sartor*, the trial court granted summary judgment to the defendant gas company in reliance on the affidavits of the defendant's vice president, general manager, and other officers. *Id.* The Supreme Court granted certiorari and held that the grant of summary judgment was inappropriate in light of the fact that the expert witnesses were interested in the outcome of the litigation. *Id.* The Debtor, while not doing so explicitly, apparently contends that Judge France's reliance on the affidavits of two DEP employees are likewise tainted by their alleged interest in the outcome of the case, thus resulting in clear error requiring reversal. We disagree. As the DEP points out, this issue is more specifically guided by the Third Circuit's decision in *United States v. Donovan*, 661 F.3d 174 (3d Cir. 2011), where the court upheld summary judgment in reliance on the affidavits of government experts which were not contradicted by the nonmovant. Thus, we conclude that the Bankruptcy Court did not err in relying on the uncontradicted expert affidavits and reports of Long and Rathfon.

for remediation of a past, closed harm as opposed to amelioration of a continuing threat. As the court below noted, and the DEP here points out, the Debtor offers no substantiating evidence other than his own statement to counter the DEP's expert evidence. We again must restate the well-established principle of summary judgment motion practice that the unsubstantiated and conclusory allegations of a nonmoving party are insufficient, without more, to survive summary judgment. *See Kirleis*, 560 F.3d at 161; *Podobnik*, 409 F.3d at 594. The Debtor "cannot create an issue of fact merely by . . . denying averments" and hope to survive summary judgment without producing any substantiating evidence supporting his denial. *See Thimons v. PNC Bank*, 254 F. App'x 895, 899 (3d Cir. 2007).

In sum, we find that the DEP offered objective, substantiated evidence from experts in the field of environmental contamination, evidence buttressed by the independent adjudication of the PEHB, both of which established that the Thebes Site continues to present an ongoing contamination threat to nearby water supplies. The Plaintiff failed to offer, both to the lower court or to this Court on appeal, anything other than his own argument that he does not know of continuing pollution, a self-serving contention which, lacking any supporting evidence, is insufficient to create a genuine issue of material fact for trial. Accordingly, we find no error in the Bankruptcy Court's opinion and order granting the DEP's motion

for summary judgment.

## V.     CONCLUSION

The judgment of the Bankruptcy Court shall be affirmed.  An appropriate Order shall issue.